## No. 11,229.

### ABRAMS, ET AL. *v.* COLWELL.

Decided February 1, 1926.   Rehearing denied March 1, 1926.

Action to quiet title to easements across land for irrigation purposes.   Judgment for plaintiff.

### *Affirmed.*

1. IRRIGATION—*Ditch and Pipe Line—Easements—Title.*   In an action to quiet title to easements across the land of another for a ditch and pipe line for the carriage of water, the evidence is reviewed, and a decree sustaining the contention of plaintiff that the easements were due to an executed parol license from defendant's grantor to plaintiff's grantor, and an open and notorious use under claim of right for twenty years, is upheld.

*Error to the District Court of Weld County, Hon. George H. Bradfield, Judge.*

Mr. C. E. JOHNSON, for plaintiffs in error.

Mr. HARRY N. HAYNES, Mr. RALPH L. DOUGHERTY, for defendant in error.

*Department Three.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

DEFENDANT in error brought this action in the district court as plaintiff against plaintiffs in error Abrams and Anderson, and others as defendants, to quiet title to two alleged easements across land of defendant Abrams, and to enjoin defendants from interfering therewith.   The parties will be referred to here as in the trial court.   Defendants Abrams and Anderson

answered setting up certain defenses. Defendant, the Town of Johnstown, filed a disclaimer, and admitted all the facts alleged in plaintiff's complaint, and recognizing, and acquiescing in, the permanent right of the plaintiff to the easements claimed. The other defendants made no appearance in the action. Trial to the court, findings and judgment for plaintiff, and defendants Abrams and Anderson bring the case here.

The easements claimed by plaintiff are, as alleged by her: "1. To conduct when needed in irrigation seasons 50 statute inches of water belonging to plaintiff through an existing pipeline across Abrams' land from its west boundary to the eastern terminus of said pipeline, thence southerly a short distance to a culvert crossing a public highway, which culvert leads to the eastern part of 10 acres of plaintiff's land, to irrigate the same and fill her cistern.

"2. To conduct the same quantity of water through a small open ditch for a short distance adjacent to said pipeline and thence southerly to another culvert across the same highway, to irrigate the western part of plaintiff's said land."

Plaintiff claims that these easements were due to an executed parole license from Abrams' grantor to plaintiff's grantor, and an open and notorious use under claim of right for more than twenty years.

Easement No. 1 will be referred to here as the "pipeline," and No. 2 as the "West Ditch."

The question for determination here is: Was the evidence sufficient to sustain the findings of the trial court that the use was not permissive only, as claimed by defendants, but was due to an executed parole license or an open and notorious use under claim of right for more than twenty years as claimed by the plaintiff?

At the time the alleged parole license was made, Peter Larson was the owner of the land now owned by defendant Abrams, and upon which the easements claimed

are situate. At that time F. M. Waggener was the owner of the land here involved, now owned by the plaintiff Colwell.

Waggener's testimony was to the effect that he constructed the two culverts, one crossing the highway to the east side of plaintiff's land, and the other across the road to the west part of the land; that they were constructed prior to the year 1900; that he was in possession of the land as owner from 1895 until he sold it to Deines in 1908; that in 1899 Larson and he constructed a dike and flume, since replaced by the pipeline in question; that he ran water on the westerly side in 1898, before the dike was built; that his men and teams helped to construct the dike, and that the lumber used to build the flume was hauled by his son from Loveland; that Larson told him if he would construct a dike and flume there so that he could cover considerable of his land, he (Waggener) could get more of his land irrigated; that if Waggener would help him on that he could run water through the flume and back to cover his high ground, and he would give Waggener the right to run his water through there when he wanted, and Waggener says that he did so. His testimony was further, that until he sold the land to Deines, every year after the dike and flume were completed he ran water through them to the more easterly crossing on the highway, and that he had it on a claim of right; that no question was ever raised by Larson as to his right to use either the West Ditch or the one on the east whenever he wished to irrigate his land through them; that since 1899, so far as he knew, the easterly crossing at the road has continued to the time of the trial; that the two culverts were needed to irrigate the 10 acres, one for the West Ditch, and one for the pipeline; that he used the West Ditch and the culvert crossing the highway beginning the second year, when he set out his orchard; that the water ran there first in 1898; that Larson constructed

the West Ditch and Waggener constructed the culvert; that the water from the pipeline was used by both him and Larson, not only for irrigation, but to fill their cisterns.

Deines' testimony was to the effect that when he bought the Colwell land Waggener told him that he had a right to take water through the dike on Larson's land; that he deeded the land to Pullian on the same day that he bought it from Waggener, but that he had been in control of the land about two years before; that he irrigated his land through the dike and flume, and there was never any question about the use of it, but that he did not use the West Ditch; that when he was there, there was a pipeline and a dike, and that he and Larson would irrigate together; that in the use of the ditch he would ask nobody, and that when he wanted to use it Larson would tell him to be ready.

Rodeffer testified that he farmed the land for Pullian during the years 1910, 1911, 1912 and 1915; that he irrigated the land with water coming through the pipeline; that when he needed to irrigate he would order the superintendent of the Home Supply Canal to turn water in to the lateral leading to the pipeline, and that he never asked anybody's permission to do so; that no question was ever raised as to his right to use it; that to irrigate the orchard on the west part of the 10 acres he used the West Ditch and culvert, and that Larson never disputed his right to run water that way to irrigate the orchard.

Held farmed the land from 1903 to 1906, and testified he did not use the West Ditch during that time.

The superintendent of the Home Supply Ditch testified that to his knowledge water had been run through the lateral or West Ditch every year from 1905; that when he received an order from the owner or tenant on the plaintiff's farm to turn water into the lateral he did so, and that through the west culvert he had seen water running two or three times through the season.

D. T. Pullian testified that he owned the Colwell farm since the fall of 1909; that he owned it ten years before he deeded it to his daughter, the plaintiff in this case; that prior to obtaining his deed he talked with Larson, then owner of the Abrams farm, and told Larson that Deines had told him Waggener had sold him a right of way through both of the ditches here in question, and was selling him the same right; that he asked Larson if that was correct; that he repeated Deines' statement to him that the water had always run through those ditches, designating the ditches leading to each of the road crossings, and he presumed they always would; that Mr. Larson recognized the right claimed; that before the present pipeline was constructed in 1912 Larson told him that the town of Johnstown wanted to put in a larger pipeline near the old dike and flume. Larson said it would be a good thing for both of them, since they would then not have to keep up the old dike and flume, and that their rights thereunder would not be interfered with; that prior to 1923 the right to conduct water through both ditches in question here was always recognized; that he knew personally the method of dividing the water out of the cement box by the various parties interested, whose rights to use the pipeline were previously recognized by each other before Abrams became owner of the Larson farm; that he had personal knowledge that White, when owner and in possession of both the Larson and the Colwell farms, ran water across the road in the West Ditch; that in 1899 a conduit was substituted for the open ditch; that the ditch running south from where the present cement box now is to the highway and culvert crossing had been there since about 1900 when the culvert was put across the road; that Waggener put it in there; that the West Ditch used to irrigate the orchard for several years was used only by Waggener and some of his tenants; that the west culvert has always been used to water the west end of

the orchard; that when he spoke to Larson regarding the two rights of way Larson told him the water had always run there, and he thought it always would, and told him there would never be any trouble about it.

It is true that, "in order to establish a prescriptive right something more than mere permissive user must be shown," but in the instant case much more than permissive user is shown, and the evidence relative to the prescriptive right considered in connection with the evidence of an executed parole license from Larson to plaintiff's grantor, we think is ample to sustain the findings and decree of the trial court. We have carefully read the entire record and are convinced that none of defendants' contentions can be sustained. The judgment should be affirmed.

Affirmed.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE CAMPBELL concur.